UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| PHOSASSET GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV421-205 |
| | ) |
| GULFSTREAM AEROSPACE | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff PhosAsset GmbH ("PhosAsset") brought this action alleging that Defendant Gulfstream Aerospace Corporation ("Gulfstream") committed fraud and negligent misrepresentation in connection with the sale of an aircraft. *See generally* doc. 1. Before the Court is Gulfstream's Motion to Compel Arbitration. Doc. 11. PhosAsset responded in opposition, doc. 18, and Gulfstream replied, doc. 22. For the following reasons, the motion should be **GRANTED**. Doc. 11.

## BACKGROUND

Gulfstream manufactured an aircraft which was transferred multiple times[1] before PhosAsset acquired it. Doc. 11 at 9; doc. 18 at 4. PhosAsset alleges that technicians subsequently discovered defects in the aircraft during an inspection. Doc. 18 at 5. Specifically, the aircraft had misshaped holes in the floor beams, and aluminum shavings inside the sealant under the floorboard. *Id.* at 5.

After PhosAsset discovered the defects, the parties "executed [Gulfstream's] standard manufacturer warranty governing repair and replacement of certain aircraft parts" (the "Warranty Agreement"). Doc. 18 at 6. The agreement includes a promise that Gulfstream will "repair, replace, or correct, at Gulfstream's sole election, [certain] defective part[s] or condition[s] . . . at Gulfstream's expense[.]" Doc. 18-1 at 5. It also contains an arbitration clause:

---

[1] The parties' briefing discusses each transfer and the related contracts in detail. *See* doc. 11 at 2-12; doc. 18 at 4-8. The Court need not discuss those transfers because, as discussed below, the parties do not dispute the validity of the contract between Gulfstream and PhosAsset, *see* doc. 11 at 13; doc. 18 at 24, and that contract requires the Court to compel arbitration.

> Any controversy or claim arising out of or relating to this Assumption of Warranties, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with the provisions of its Commercial Arbitration Rules, including as appropriate its Procedures for Large, Complex Commercial Disputes or its International Dispute Resolution Procedures, and judgment on the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof. . . .

Doc. 18-1 at 2.

Gulfstream repaired the aircraft pursuant to the Warranty Agreement. Doc. 11 at 11. PhosAsset subsequently brought this action alleging that Gulfstream was aware of the defects during the manufacturing process, and misrepresented the aircraft's airworthiness. *See, e.g.*, doc. 1 at 13. It seeks damages for the diminution in value of the aircraft caused by the defects. *See id.* at 2, 14. Gulfstream requests that the Court "compel arbitration and dismiss the Complaint" based on the arbitration clause in the Warranty Agreement. *See* doc. 11 at 1.

## ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 governs motions to compel arbitration. *Walker v. Hyundai Cap. Am., Inc.*, 2018 WL 1352173, at *1 (S.D. Ga. Mar. 15, 2018). "A party to an arbitration agreement may move 'for an order directing that such arbitration proceed

in the manner provided for in such agreement' under § 4 of the FAA, and for a stay of proceedings in federal court pending the outcome of arbitration under § 3." *Attix v. Carrington Mortg. Servs., LLC*, ___ F.4th ___, 2022 WL 1682237, at *6 (11th Cir. May 26, 2022) (quoting 9 U.S.C. §§ 3-4). The FAA has a strong policy favoring the enforcement of arbitration agreements. *Walthour v. Chipio Winshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005)).

"Before enforcing an arbitration agreement, the court should ensure [1] that the agreement was formed and [2] that it applies to the dispute at hand." *Attix*, 2022 WL 1682237, at *6; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 527 (2019) (referring to the latter question as "arbitrability"). "[O]rdinarily, the question of arbitrability is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide otherwise . . . ." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986) (internal quotations and alterations omitted)). If parties "clear[ly] and unmistakab[ly]" delegate the arbitrability question to an

4

arbitrator, "a court possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529-30. Finally, the Supreme Court has explained that Sections 1 and 2 of the FAA "limit the scope of the court's powers" to compel arbitration. *New Prime Inc. v. Oliveira*, ___ U.S. ___, 139 S. Ct. 532, 537 (2019). Therefore, before compelling arbitration, "a court must first know whether the contract itself falls within or beyond the boundaries of [those sections]." *Id.*

The parties do not dispute that the Warranty Agreement is a valid contract in which Gulfstream agreed to make certain aircraft repairs, and the parties agreed to settle disputes "arising out of or relating to" the agreement by arbitration. *See, e.g.*, doc. 11 at 5; doc. 18 at 4 n.2. Rather, they dispute whether the agreement applies to this dispute. *Compare, e.g.*, doc. 18 at 8-14 ("The arbitration clause simply does not cover [PhosAsset's tort claims.]"), *with* doc. 22 at 12-16 (arguing that PhosAsset's tort claims "arise out of" or "relate to" the Warranty Agreement). The Court, however, may not adjudicate this arbitrability question because the parties agreed to settle disputes "arising out of or relating to [the Warranty Agreement], . . . by arbitration administered by the [AAA] in accordance with the provisions of its Commercial

Arbitration Rules[.]" Doc. 18-1 at 2. Since the AAA rules give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim",[2] the parties "clearly and unmistakably" delegated all arbitrability determinations to the arbitrator. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 937-38 (11th Cir. 2018); *see also U.S. Nutraceuticals,* LLC, 769 F.3d at 1311 ("When the parties incorporated [the AAA rules in their contract], they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator.").

PhosAsset spends much of its response arguing that its tort claims do not arise out of or relate to the Warranty Agreement because the claims would have arisen regardless of whether the parties entered a contract. *See* doc. 18 at 8-14. As the Supreme Court has explained, however, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator", even if a party's argument that a dispute is arbitrable is "wholly groundless." *Henry Schein*, 139 S. Ct.

---

[2]   *See* Am. Arbitration Ass'n, Consumer Arbitration Rules, R-7(a) (2016), https://adr.org/sites/default/files/Commercial%20Rules.pdf.

at 529-30. PhosAsset cites several courts concluding that disputes are not arbitrable because they are outside the scope of arbitration clauses. *See* doc. 18 at 8-14. Those cases, however, do not include discussions of whether the parties clearly delegated arbitrability determinations.[3] Absent a delegation of the issue to an arbitrator, arbitrability is "undeniably an issue for judicial determination." *U.S. Nutraceuticals, LLC*, 769 F.3d at 1311 (quoting *AT&T Tech., Inc.*, 475 U.S. at 649). Here, however, the Court has "no power" to decide the question. *Attix*, 2022 WL 1682237, at *7 (quoting *Henry Schein*, 139 S. Ct. at 529).

Finally, FAA Sections 1 and 2 do not prohibit the Court from compelling arbitration. *See New Prime*, 139 S. Ct. at 537. The parties do not dispute that the Warranty Agreement is within the bounds of the "General Provisions" in Section 1. *See* 9 U.S.C. § 1; *see generally* docs. 11, 18 & 22. Further, "Section 2 provides that the [FAA] applies only when the agreement is set forth as 'a written provision in any maritime

---

[3] *See, e.g.*, *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011) (defendant was foreclosed from arguing that the dispute was not arbitrable on appeal under the invited error doctrine because it "asked the district court to decide for itself whether the dispute was subject to arbitration"); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (evaluating arbitrability without discussion of whether the parties delegated that determination); *Gamble v. New England Auto Fin., Inc.*, 281 F. Supp. 3d 1354, 1358 (N.D. Ga. 2017) (same).

transaction or a contract evidencing a transaction involving commerce.'" *New Prime*, 139 S. Ct. at 534 (quoting 9 U.S.C. § 2). The parties do not dispute that the Warranty Agreement evidences a transaction involving commerce. *See generally* docs. 11, 18 & 22.

PhosAsset instead argues that compelling arbitration would "disregard the plain text of Section 2" because Section 2 "require[s] that the dispute arise out of the contract the [party seeking compelled arbitration] relies upon." Doc. 18 at 18. Section 2's "plain text", however, requires the Court to determine whether the "*contract* evidence[es] a transaction involving commerce." 9 U.S.C. § 2 (emphasis added). As discussed, if the "*contract itself* falls within . . . the boundaries of §§ 1 and 2", *New Prime*, 139 S. Ct. at 537 (emphasis added), the Court must enforce its arbitration clause, including any agreement to delegate arbitrability determinations. *See Henry Schein*, 139 S. Ct. at 529 ("We have held that a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous." (internal quotations and citation omitted)). PhosAsset does not cite any federal precedent suggesting that Section 2 requires the Court to determine "whether this case arises under

8

the [FAA] in the first instance", doc. 18 at 15, and the Court is unaware of such precedent.[4] Accordingly, Gulfstream's Motion to Compel should be **GRANTED**.

PhosAsset filed a Request for Oral Argument on the Motion to Compel Arbitration. Doc. 23. Oral Argument is unnecessary because, as discussed below, the parties have 14 days to object to this Report and Recommendation ("R&R"). The request should, therefore, be **DENIED**. Doc. 23.

---

[4] The Court has identified one federal district court discussing, in dicta, an interpretation of *Henry Schein* similar to PhosAsset's interpretation:

> It is not clear that *Henry Schein* mandates [compelled arbitration when the parties delegate arbitrability]. . . . [E]ven in the presence of an arbitration agreement with a delegation clause, courts must still decide preliminary contract issues of assent and formation before referring the dispute to an arbitrator. . . . Accordingly, the Court sees no reason why [courts could not] frame[ ] the arbitrability issue as implicating principles of contract formation, rather than dismissing the plaintiffs' argument[s] as . . . improper attempt[s] to challenge the scope of the parties' agreement[s].

S*morowski v. Domino's Pizza LLC*, 2021 WL 4440167, at *6 (C.D. Cal. July 23, 2021). Even that court, however, recognized that this proposed approach is inconsistent with the Ninth Circuit's application of *Henry Schein*, and compelled arbitration because the parties clearly and unmistakably delegated arbitrability determinations. *See id.* (citing *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 466 (9th Cir. 2021) ("[The parties] entered into a valid arbitration agreement[.] . . . Any dispute as to the scope of that agreement, and whether Appellants' claims fall outside the agreement, must be determined by the arbitrator under the . . . delegation clause.")). Similarly here, since the parties delegated the arbitrability question, "all gateway [arbitrability] issues— regardless of how frivolous the court may deem them to be—should be arbitrated." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1270 (11th Cir. 2017) (emphasis in original).

9

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 13th day of June, 2022.

/s/ Christopher L. Ray
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA